NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
KEVIN WYATT,                         :
                                     :
    Plaintiff,                       :          Civil Action No. 10-6751 (SRC)
                                     :
v.                                   :          **OPINION**
                                     :
COMMISSIONER OF SOCIAL               :
SECURITY,                            :
                                     :
    Defendant.                       :
_____:

**CHESLER, District Judge**

    This matter comes before the Court on the appeal by Plaintiff Kevin Wyatt ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded for further proceedings.

### I.  BACKGROUND

    The following facts are undisputed. Plaintiff was born in 1957. He has worked as a shipping and receiving clerk, laborer, and stock supervisor. This case involves applications for supplemental security income and disability insurance benefits filed on August 20, 2007. Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, two hearings were held before Administrative Law Judge Michal Lissek (the "ALJ"). The ALJ denied Plaintiff's claim in an unfavorable decision issued on February 4, 2010.

After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security. Plaintiff then filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v.

Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.      Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists,

a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C.     The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1] 20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (Id.) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5

work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy. These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity). These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b). When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled. 20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983). The claimant may rebut any finding of fact as to a vocational factor. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining

whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

    D.    Plaintiff's Appeal

Plaintiff begins by asserting, without explanatory detail, that the ALJ's decision is unreviewable because the ALJ explained no findings. This vague, blanket condemnation of the ALJ's decision does not appear to be justified by the record.

Plaintiff has nicely outlined his main argument on appeal as follows:

> (1) Plaintiff suffers tremors (2) those tremors are "severe" according to the medical evidence of record and the ALJ's own findings. (3) Any finding of severity means by definition that more than a minimal restriction exists (4) thus plaintiff's tremors impose more than a minimal restriction in the use of his hands (5) the vocational expert testified that no jobs existed which could be performed in the presence of "any problem with the use of the hands". (6) This testimony occurred at the fifth step of the sequential evaluation where it is the government's burden to establish the existence of jobs. (7) The only way to so establish in the presence of non-exertional impairments is through the testimony of a vocational expert. (8) The Commissioner picked the vocational expert. (9) That vocational expert testified that on the basis of the ALJ's own finding of severity with regard to tremors of the hands plaintiff would be unable to meet the production quotas of any of the jobs recited. (10) The Commissioner has failed to meet his burden at the fifth step. (11) Plaintiff has established his disability through the testimony of the Commissioner's own vocational expert on the basis of the ALJ's own severity findings. (12) The ALJ failed to mention any of this in her administrative decision.

(Pl.'s Br. 21-22.) This outline is very helpful because it makes it easy to see the flaw in Plaintiff's argument, which is the third proposition: "Any finding of severity means by definition

7

that more than a minimal restriction exists." Plaintiff has misunderstood the meaning of "severe" at step two.

> The Third Circuit has explained the analysis at step two as follows:
>
> The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. Reasonable doubts on severity are to be resolved in favor of the claimant.

Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted); accord McCrea v. Commissioner, 370 F.3d 357, 360 (3d Cir. 2003) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.").

Thus, under Newell, the ALJ's determination that Plaintiff's "intermittent tremulousness" was a severe impairment at step two means only that the claimant presented evidence sufficient to at least raise the possibility that he has more than a slight abnormality in this regard. Plaintiff has pointed to no law to support the proposition that finding a severe impairment at step two has any impact on a claimant's burden at step four – nor is this Court aware of any. It is highlighting the obvious to note that steps two and four are different steps, and that it is frequently the case that an ALJ finds a severe impairment at step two, but does not find that said impairment limits the claimant's residual functional capacity at step four.

It appears to this Court that Plaintiff would like to use the step two finding to relieve him from the burden of proving at step four that his intermittent tremulousness limits his ability to

work. Such relief is not available under Third Circuit law, and, at step four, Plaintiff bore the burden of proving this.[3] On review, this Court asks whether the ALJ's determination that intermittent tremulousness did not limit Plaintiff's ability to work was supported by substantial evidence.

It is at this point, however, that the defects in the ALJ's decision become apparent: the ALJ did not focus on the question of whether the tremulousness was limiting, nor does the decision carefully review the relevant evidence regarding Plaintiff's tremulousness. Instead, what this Court finds is that the ALJ documented that consultative examiner Dr. Makhija reported Plaintiff's tremulousness, but stopped there. (Tr. 13, 14, 265, 267.)

The ALJ appears to have overlooked a number of important pieces of evidence in the record. The ALJ appears to have overlooked the fact that Dr. Makhija was sufficiently concerned about the tremulousness that one of his diagnoses was "Rule out Parkinson Disease." (Tr. 267.) Also, consultative examiner Dr. Flaherty reviewed Dr. Makhija's report and stated: "He was tremulous and the doctor thought Parkinson's should be ruled out." (Tr. 284.) Consultative examiner Dr. Eisenstadt, under the heading "Neurological Disability," wrote "Tremors and weakness of arms + legs." (Tr. 316.) Consultative examiner Dr. Stoller, a neurologist, also reported Plaintiff's tremulousness, and ruled out a diagnosis of Parkinson's disease. (Tr. 288, 310.) In answer to the question, "Are there any other conditions which limit this individual's ability to do work related activities?" Dr. Stoller wrote: "tremor in hands 2° to anxiety." (Tr.

---

[3] Plaintiff's argument overlooks the important differences between the second and fourth steps under Third Circuit law. At step two, the Third Circuit gives the claimant the benefit of the doubt; at step four, it does not. This alone changes the burden of proof so greatly that a determination that an impairment is severe at step two cannot control the outcome of the residual functional capacity analysis at step four.

9

291.)

Thus, the ALJ appears to have overlooked a substantial piece of evidence from Dr. Stoller that Plaintiff's tremulousness limited his ability to work.  Furthermore, this Court finds a substantial body of medical evidence of record that the ALJ failed to discuss in his decision.  In the face of so many doctors finding the tremulousness to be medically significant, the ALJ cannot merely skip over the issue.

The Regulations state: "We will assess your residual functional capacity based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545.  The failure of an ALJ to follow this Regulation constitutes a ground for remand, as in Fargnoli:

> The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four. . . [W]e do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.  His failure to do so here leaves us little choice but to remand for a more comprehensive analysis of the evidence consistent with the requirements of applicable regulations and the law of this Circuit.

Fargnoli v. Halter, 247 F.3d 34, 41-42 (3d Cir. 2001).  In the instant case, the ALJ failed to consider and evaluate all the medical evidence relating to Plaintiff's tremulousness in the record – especially Dr. Stoller's finding that his tremulousness limited his ability to work.  Following Fargnoli, the case will be remanded to the Commissioner so that the ALJ may conduct a more comprehensive analysis of the evidence.

The Court notes that the ALJ's failure to consider all the evidence regarding tremulousness may well not be harmless error.  Plaintiff argues that, at step five, given the cross-examination of the vocational expert, Dr. Feinstein, the Commissioner might not have been able to carry his burden of proof that there exist jobs in significant numbers for someone with Plaintiff's characteristics, including limitations of hand use, and this may well be so.

This Court finds that the ALJ erred at step four by failing to consider all relevant evidence. The decision of the Commissioner will be vacated, and the case remanded to the Commissioner for further proceedings in accordance with this Opinion.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is vacated. and the case is remanded to the Commissioner for further proceedings in accordance with this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: October 13, 2011